On the trial it appeared that the slave in question belonged to one Gordon, who died in 1806 intestate; administration on his estate was granted to the plaintiff, his window, and Wesley Gordon, his son, and one of the distributees. It having been ascertained that there were debts due from the estate more than ordinary perishable property would pay, it was agreed in 1807 between the plaintiff on the one part and Wesley Gordon and his brothers and sisters (the other distributees) on the other, that if the plaintiff, their mother, would pay those debts, supposed to be of amount equal to the value of the slave in question, she might keep the slave as her own property. At the time of this agreement two of the distributees were infants. Mrs. Gordon, the plaintiff, accordingly took possession of the slave and kept it until 1811, always claiming him as her own. The estate was settled and the distributees paid, and no objection has ever been set up by the infants, though since of full age, nor has any dissatisfaction been expressed by them. The plaintiff made arrangements for the payment of the debts above mentioned, and evidence was offered to show the fact of payment, which was denied by defendant.
In 1811 the slave went into possession of the defendant under a (240) pledge or mortgage from the plaintiff to secure the payment of $200 to the defendant. Afterwards Wesley Gordon paid defendant, redeemed the pledge, and took possession of the negro. Wesley Gordon then executed to his mother, the plaintiff, a writing declaring that he held the negro as a security for the money he had paid, and that plaintiff was at liberty, by repayment to him, to redeem at any time within five years. In 1817 the plaintiff did pay to Wesley Gordon what was due for the negro, and he was delivered to her by Wesley During the same year Wesley again obtained possession of the negro and sold him to defendant to discharge a debt which he had contracted with defendant. *Page 132 
On these facts defendant contended that the payment of debts to the value of the slave by the administratrix, with the consent of all the distributees, would not give a title to the slave; and that the defendant, having purchased from a coadministrator, had good title.
The judge, leaving to the jury the question of fact whether there had been such a payment as was alleged, instructed them that an advance by an executor or administrator of money in the payment of debts to the value of a particular chattel, with the consent and upon the express agreement to the distributees that on such payment the chattel should belong to the administrator or executor, would make such chattel his own. And the jury was further instructed that, after receiving the negro as plaintiff's property, by way of mortgage or pledge to secure a debt, by parting with the negro to Wesley Gordon on receiving the sum due, and Wesley holding him (as defendant did) by way of pledge for the payment of the money, and surrendering the negro to plaintiff upon such payment, that both Wesley and the defendant had admitted that she had title at that time, and were estopped now to deny it. (241) Verdict for plaintiff; new trial refused; judgment, and appeal.
Although I think the defendant has no right to the negro in question, I think the plaintiff has no right to recover in her individual name, because she does not show a right to the negro in that character. Perhaps if the negro had been taken out of her possession by the defendant, she might have maintained an action for him without naming herself administratrix. Godolph, 134; Wentw. Off. of Ex., 104. But this was not the case. The contract recited, under which she claims the negro, was entered into only by her and some only of the distributees; the others at the time were under age. It does not appear that they had arrived at maturity when the estate was settled; and although they have expressed no dissatisfaction at the contract, it does not appear that they have confirmed it, or how long they have acquiesced under it. If they have ratified it, I see no reason why the plaintiff should not recover. If it has not been ratified, a recovery may be effected by the representatives of the intestate in their representative character. If one of them refuses to sue, he may be summoned and severed. Bac. Abr., Exr. and Admr., D. 3. But, under the circumstances of the case, I think the rule for a new trial should be made absolute.